**Elouise Pepion COBELL, et al., Plaintiffs,**

v.

**Gale A. NORTON, Secretary of the Interior, et al., Defendants.**

**No. CIV.A. 96–1285 RCL.**

United States District Court, District of Columbia.

Dec. 23, 2002.

---

Lorna K. Babby, Dennis Marc Gingold, Elliott H. Levitas, Kilpatrick Stockton, LLP, Keith M. Harper, Washington, DC, Robert Meyer Peregoy, Ronan, MT, for plaintiffs.

Robert D. Luskin, Patton Boggs LLP, Tom C. Clark, U.S. Department of Justice, Land & Natural Resources Division, Susan Virginia Cook, Brian L. Ferrell, Andrew M. Eschen, Charles Walter Findlay, III, Sarah D. Himmelhoch, John Charles Cruden, JoAnn Shyloski, Barry Weiner, Terry M. Petrie, U.S. Department of Justice, Environment & Natural Resources Division, Sandra Marguerite Schraibman, Henry A. Azar, Jr., U.S. Department of Justice, Federal Programs Branch, Connie S. Lundgren, Edith R. Blackwell, U.S. Department of Interior, Lewis Steven Wiener, Sutherland, Asbill & Brennan, L.L.P., J. Christopher Kohn, Sandra Peavler Spooner, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, Amalia D. Kessler, John Warshawsky, John J. Siemietkowski, U.S. Department of Justice, Commercial Litigation Branch, Mark E. Nagle, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Attorney's Office, Seth Brandon Shapiro, Jonathan Brian New, Jennifer R. Rivera, John Stemplewicz, Phillip Martin Seligman, Michael John Quinn, Gino D. Vissicchio, John R. Kresse, Timothy E. Curley, Tracy Lyle Hilmer, Dodge Wells, U.S. Department of Justice, Civil Division, John S. Most, U.S. Department of Justice, Trial Attorney, General Litigation Section, Environment & Natural Resources Division, Herbert Lawrence Fenster, McKenna Long & Aldridge, LLP, Elizabeth Wallace Fleming, B. Michael Rauh, Manatt, Phelps & Phillips, L.L.P., Washington, DC, for defendants.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on plaintiffs' motion for a preliminary injunction [1534–2], which was filed on September 20, 2002, and other related motions. During oral argument, this Court directed both parties to prepare supplemental briefs on the issues raised by plaintiffs' motion. Those briefs have been filed with the Court. In their supplemental reply brief [1651–1], plaintiffs amended their motion to include an alternative request for entry of an order under Rule 23(d) of the Federal Rules of Civil Procedure.[1] Upon consideration of plaintiffs' mo-

---

1. The caption of plaintiffs' supplemental reply brief states that relief is sought under Rule 23(e). This is obviously a typographical error by plaintiffs, because subsection (e) governs dismissal and settlement of class actions, not orders to be entered in pending class actions. The remainder

tion, the opposition thereto, defendants' reply brief, the oral arguments of counsel, the supplemental briefs filed by the parties, and the applicable law, the Court finds that entry of an order under Federal Rule of Civil Procedure 23(d) is appropriate at this time.

## I. BACKGROUND

On March 1, 2000, defendants moved for entry of an order by this Court in conjunction with a public administrative process that defendants planned to hold. Because the administrative process involved a series of public meetings at which class members in this litigation would be afforded an opportunity for notice and comment, defendants requested an order finding that any communications between defendants (or their counsel) and class members that occurred in the course of this administrative process would not violate ethical rules prohibiting attorney contacts with represented parties. This Court granted defendants' motion in an order filed on March 28, 2000. In that order, the Court explained that although it found that the communications that defendants anticipated would occur during the administrative process would not contravene the applicable ethical rules, it would "make[ ] no ruling at this time on any other legal question presented by [defendants'] Proposed Notice."

On December 11, 2001, defendants filed an emergency motion for entry of an order by this Court clarifying the ethical obligations of their attorneys in conjunction with another public administrative process that defendants planned to hold. The Court granted defendants' motion the following day.[2]

On September 10, 2002, in a motion filed with this Court, defendants announced that they were preparing to send historical statements of account to nearly eight thousand individual Indian account holders, among which were class members in this litigation. Defendants did not seek prior authorization from the Court regarding these communica-

tions with class members. In response, plaintiffs moved for a temporary restraining order and preliminary injunction barring defendants from sending the historical statements of account to the individual Indian account holders without first obtaining permission from this Court. On October 9 and 28, 2002, while these motions were pending before the Court, defendants mailed historical statements of account to approximately 1200 individual account holders. A cover letter mailed with each of the statements contained the following language:

> If you have concerns about the Historical Statement of Account included with this letter or if you believe it is in error, you may wish to file a challenge with OHTA [the Office of Historical Trust Accounting]..... **If you do not challenge the historical account statement or request an extension within 60 calendar days of the postmark on the envelope containing this letter, the enclosed Historical Statement of Account will be final and cannot be appealed....** You may appeal OHTA's final response to the Interior Board of Indian Appeals (IBIA) by filing a Notice of Appeal with IBIA within 30 calendar days of the date you receive OHTA's response. [emphasis in original].

On October 10, 2002, plaintiffs filed a request for referral of defense counsel to the disciplinary panel of this Court for violation of attorney ethics rules. On November 1, this Court heard oral arguments from counsel on the issues raised by plaintiffs' motion for a preliminary injunction, and ordered both parties to file supplemental briefs with the Court. Defendants filed their supplemental brief on November 15, 2002. Plaintiffs filed a brief in opposition thereto on December 2, 2002 renewing their request for a preliminary injunction and, in the alternative, for an order from this Court under Rule 23 of the Federal Rules of Civil Procedure. Defendants filed their reply brief on December 9.

of the brief makes it clear that relief is sought under subsection (d) of Rule 23.

**2.** None of the attorneys who were at that time subject to a motion for an order to show cause

(except for Solicitor William G. Myers) were permitted to participate in the administrative process, pending further rulings from the Court. *See* Order dated December 12, 2001.

## II. ANALYSIS

A. Plaintiffs' Request for an Order Pursuant to Rule 23(d) of the Federal Rules of Civil Procedure

The premiere treatise on class actions speaks directly to the issue now before the Court:

> After a court has certified a case as a class action and the time for exclusions has expired, the attorney for the named plaintiff represents all class members who are otherwise unrepresented by counsel. Defense counsel must observe the rules of ethical conduct in these circumstances and communicate with the opposing parties through their attorney, who is counsel for the class....
>
> The court may allow the defendant to communicate with actual class members in the ordinary course of business, as long as the communications do not relate to the claims involved in the litigation.... Furthermore, [the] defendant may not attempt to solicit dismissals with prejudice, releases, or covenants not to sue from individual members of the existing class after the class has been certified and the time for exclusion has expired, except under conditions specified by the court to protect the rights of absent class members.

3 NEWBERG ON CLASS ACTIONS § 15.18 (3d ed.1992). The statements mailed by defendants to individual class members have the effect of extinguishing the class members' rights to a full and accurate accounting after defendants have "fixed the system." The entitlement of class members to such an accounting is the subject of Phase II of current litigation. Because of the wording in the notices included in the statements, any ruling by this Court following Phase II will not apply to the class members who have received these statements because the statements purport to be final and non-appealable historical statements of account. In effect, these members will be involuntarily opted out of Phase II of this litigation, because they will not receive the benefits of any remedy that might be ordered. It is thus difficult for this Court to imagine a form of communication that would relate more directly to the claims involved in this litigation. However, in none of the briefs that defendants have filed with this Court is there any attempt to defend the proposition that defendants may engage in communications that purport to extinguish the rights of class members. Defendants also fail to explain why they failed to seek prior authorization from this Court to engage in communications with class members, as they did when this issue arose in 2000 and 2001.[3]

---

3. The sole attempt at an explanation comes in a footnote in defendants' supplemental opposition brief, in which defendants feebly assert that "the communications involved in those motions were different from the communication involved here where Interior believes it is required to transmit the historical statements of account to the account holders for whom they were prepared." Defs.' Supp. Opp. Br. at 3 n. 3.

First, it is incorrect to assert that in their previous motions, defendants did not represent to the Court that the communications for which they sought prior authorization were not "required." To the contrary, on the first page of their 2000 motion, defendants argued that "the public administrative process is authorized by, *and necessary to implement*, the American Indian Trust Fund Management Reform Act of 1994 ... and other congressional actions." Mot. for Entry of an Order Regarding a Public Administrative Process to Implement the American Indian Trust Fund Management Reform Act of 1994 ("Defs.' 2000 Mot.") at 1. Despite their belief that the contacts were not only appropriate but required by law, defendants did not proceed with these communications until they had obtained an order from this Court that the communications would not constitute a violation of Rule 4.2(a) "or any other rule of professional conduct." *Id.* Similarly, defendants asserted that the second administrative process was "based on the Secretary's statutory duty—recognized by this Court— to administer IIM trust accounts, and is being undertaken to improve the management of IIM trust assets in accordance with this Court's directives." Interior Defs.' Emergency Mot. for Entry of an Order Clarifying Ethical Obligations of Attorneys Regarding Public Administrative Notice at 5. Thus, defendants' purported distinction between the present situation and the situations in 2000 and 2001 is an illusory one.

Second, as the Court repeatedly stated during oral argument, the impropriety at issue did not consist of the sending of the statements of account, but rather of the inclusion of a notice purporting to extinguish the rights of class members. The Court certainly hopes that defendants are not seriously attempting to argue that they believe that they were somehow "required to transmit" such notices.

There is no apparent support in the available case law that permits an opposing party to engage in communications with class members that have the effect of extinguishing the rights of those class members. For example, in *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir.1985), while the issue of unsupervised contacts by the defendant bank with putative class members was pending before the district court, the bank contacted over 3000 of its customers urging them to opt out of the litigation. *Id.* at 1197–98. The district court found the decisions of the putative class members to opt out to be voidable, *id.* at 1199, and entered an order proscribing either party from discussing the issues involved in the case with class members, although it permitted the bank to engage in ordinary business affairs with its clients who were putative class members. *Kleiner v. First Nat'l Bank of Atlanta*, 99 F.R.D. 77, 79 (N.D.Ga.1983).

The Eleventh Circuit held that the district court had "ample discretion" under Rule 23 of the Federal Rules of Civil Procedure to enter such an order. *Kleiner*, 751 F.2d at 1203. The court also concluded that the order complied with the dictates of the First Amendment:

> The trial court's order was narrowly drawn to avoid suppressing utterances worthy of first amendment protection. As a directive addressed to counsel for the Bank, the ambit of the order was restricted to communications regarding the litigation. The order thus did not impinge on the Bank's ability to speak with customers about routine business matters unrelated to the lawsuit.

*Id.* at 1206.

The facts of the instant case do not differ significantly from *Kleiner*.[4] In both cases, while the issue of contacts with class members was pending before the court, the defendants engaged in communications with individual class members, the effect of which was to extinguish the very rights of the class members that were at issue in the ongoing class action. It is true that most of the class members contacted in *Kleiner* had not yet received notice of the class action, because the class had only been recently certified. But this distinction does not diminish its applicability to the instant case, especially considering the fact that the statements mailed to the class members in this case failed to inform them of the ongoing class litigation or to suggest that they might wish to obtain the advice of class counsel before making any decision regarding the statements.

Nor does the Supreme Court's decision in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981), avail defendants. In *Gulf Oil*, employees alleging racial discrimination had entered into a conciliation agreement brokered by the Equal Employment Opportunity Commission, under which the company agreed to provide individual employees with a fixed amount of back pay in exchange for releases of liability. *Id.* at 91, 101 S.Ct. 2193. Apparently dissatisfied with the agreement, the employees filed a class action against the company. *Id.* at 92, 101 S.Ct. 2193. Before the class was certified, the company sought an order limiting communications by parties and their counsel with putative class members. *Id.* The company alleged that counsel for plaintiffs had advised potential class members not to sign the releases sent under the conciliation agreement because they stood to recover larger sums through the class action. *Id.* at 93, 101 S.Ct. 2193. Without corroborating the company's unsworn allegations or making any findings of fact, the court entered an order prohibiting all communications relating to the case without the consent of the court. *Id.* The Supreme Court declined to address the First Amendment issue, concluding instead that the court had exceeded its discretion under Rule 23 because "[t]he record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order." *Id.* at 103, 101 S.Ct. 2193. The Court recognized, however, that "[i]n the conduct of

---

4. Although the *Kleiner* class was certified under subsection (b)(3) of Rule 23 of the Federal Rules of Civil Procedure, not (b)(2) as in the instant litigation, there is nothing in the *Kleiner* opinions that would limit their applicability to actions in which the class was certified under the less stringent requirements of subsection (b)(3).

a case, a court often finds it necessary to restrict the free expression of participants, including counsel, witnesses, and jurors." *Id.* at 104 n. 21, 101 S.Ct. 2193.

By contrast to *Gulf Oil,* defendants have conceded that this Court possesses the authority to enter an order under Rule 23 restricting their communications with class members. Defs.' Supp. Opp. Br. at 3; Defs.' Surreply at 5–6. However, they claim that, under *Gulf Oil,* such an order cannot be entered without first conducting a hearing on whether such an order is "needed to protect the class from undue interference and false or misleading statements." *Id.* But *Gulf Oil* contains no such directive. It provides only that such an order "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101, 101 S.Ct. 2193; *see also Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.,* 1985 WL 25746 at \*5 (D.D.C.1985) ("*Gulf Oil Co. v. Bernard* supports an order restricting the communications with class members when the evidence establishes that the restricted communications have the potential of interfering with the rights of the class members.").

■ Rule 23(d)(3) of the Federal Rules of Civil Procedure provides a court presiding over a class action with the authority to "impos[e] conditions on the representative parties." "Rule 23(d) does not, however, require a finding of actual harm; it authorizes the imposition of a restricting order to guard against the '*likelihood* of serious abuses.' " *In re School Asbestos Litig.,* 842 F.2d 671, 683 (3d Cir.1988) (citing *Gulf Oil,* 452 U.S. at 104, 101 S.Ct. 2193) (emphasis in original). Additionally, "[a] district court's duty and authority under Rule 23(d) to protect the integrity of the class and the administration of justice generally is not limited only to those communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the class." *Id.*[5] Rather, the Court "has the duty and authority to restrict com-

munications that interfere with the proper administration of a class action and to restrict conduct that abuses the rights of members of the class." *Jack Faucett Assocs.,* 1985 WL 25746 at \*5.

■ As stated during oral argument, this Court does not find objectionable the fact that defendants mailed statements of account to individual class members. Instead, what this Court considers improper is sending notices to individual class members that have the effect of extinguishing the rights of those class members without first seeking the approval of this Court. The notice contained in the transmittal letter that defendants included with each statement of account purports to extinguish the rights of the individual class members who receive them to a full and accurate accounting unless the members object within sixty days. Defendants have conceded that they did not include any language about the present litigation in this notice "precisely because any reference to the litigation without prior approval of the Court might have been misleading." Defs.' Surreply at 4 n. 4. The Court is thus at an utter loss to understand why defendants thought this Court would consider it acceptable for them to include language that extinguishes the very rights that are at the heart of this class action litigation without prior consultation with the Court.

Nevertheless, and in no uncertain terms, defendants have signaled to this Court that they intend to continue in this course of action. Their most recent brief "urges the Court to rule on this dispute as soon as possible" because "Interior has completed 14,235 historical statements of account and is ready to resume mailing them to the IIM account holders." Defs.' Surreply at 4. There is not a word, however, about whether these statements will contain notices that will extinguish the rights of these thousands of class members. The prospect of this mass mailing thus presents a significant risk of serious interference with the rights of the class members, and the Court possesses the duty and the authority to restrict communi-

---

**5.** Defendants are therefore mistaken in their assertion that "the focus must be on whether the information about the administrative procedure supplied to the account holder is untruthful or misleading." Defs.' Supp. Opp. Br. at 6.

cations that threaten to interfere with those rights. *See* NEWBERG ON CLASS ACTIONS § 15.02, at 15–6 (3d ed. 1992) ("When the court finds that the class action has been abused to the potential prejudice of class members, the court has full power to take appropriate remedial action to avoid or minimize any prejudice to the class."). Therefore, the Court will enter an order under Rule 23 to ensure the continued proper administration of this class action.

In doing so, the Court is mindful of its obligation to protect the free speech rights of defendants. The order therefore will comply with the applicable standard set forth by the court in *Kleiner*:

> In general, an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy first amendment concerns if it is grounded in good cause and issued with a "heightened sensitivity" for first amendment concerns. In ascertaining the existence of good cause, four criteria are determinative: the severity and the likelihood of the perceived harm; the precision with which the order is drawn; the availability of a less onerous alternative; and the duration of the order.

*Kleiner*, 751 F.2d at 1205–06 (citation omitted). The statements that defendants are preparing to send out impinge upon the rights of the class members who receive them to a full and accurate accounting. The Court must frame a remedy that will protect the rights of these class members. Accordingly, defendants will be prohibited from contacts with any class members during the pendency of this litigation that discuss this litigation, or the claims that have arisen therein, without the prior authorization of this Court.[6]

The Court's order will be tailored to protect the rights of defendants. The order will

6. Plaintiffs have not sought relief in relation to the class members who have already received the statements of account. Therefore, the issue of what form of relief, if any, might be warranted in relation to those class members is not properly before the Court at this time.

7. This Court has adopted the District of Columbia Rules of Professional Conduct as applicable to its proceedings, and has mandated that violations of those rules "shall be grounds for disci-

not be a blanket prohibition on communications with class members. Defendants will be permitted to continue engaging in the regular sorts of business communications with class members that occur in the ordinary course of business. The Court does not find such communications objectionable because they do not purport to extinguish the rights of the class members in this litigation.

B. Plaintiffs' Request for Referral to the Disciplinary Panel

■ Also before this Court is a request by plaintiffs for a referral of defense counsel to the Disciplinary Panel of the U.S. District Court for the District of Columbia. At issue is whether counsel violated Rule 4.2(a) of the District of Columbia Rules of Professional Conduct by permitting defendants to send notices to class members that had the effect of extinguishing those members' rights to a full and accurate accounting.[7]

Rule 4.2(a) of the District of Columbia Rules of Professional Conduct, also known as the "anti-contact rule," mandates that

> [d]uring the course of representing a client, a lawyer shall not communicate or cause another to communicate about the subject matter of the representation with a party known to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so.

Accordingly, prior to any decision as to whether referral to the disciplinary panel is warranted, the Court must first determine whether defense counsel (1) "[c]ommunicate[d] or cause[d] another to communicate" with class members [8] (2) "about the subject matter of the representation" (3) and were not "authorized by law to do so."

pline." Rule 83.15(a) of the Local Rules of the U.S. District Court for the District of Columbia.

8. It is undisputed that the class members constitute a represented party, for purposes of the Rule. As defendants asserted in an earlier motion filed with this Court, "[a]s a general matter, 'the rules governing communications apply as though each class member is a client of class counsel.'" Defs.' 2000 Mot. at 3 (citations omitted).

### 1. Communication or Causing Another to Communicate

Defendants assert that "[a]lthough Solicitor's Office and DOJ attorneys participated in the effort to produce these statements of accounts to ensure that the Court's orders in this case were followed during this process, no lawyer communicated with, or 'cause[d] another to communicate' with a represented party in this litigation." Defs.' Opp. at 4 n. 4. Accordingly, defendants argue, the actions of defense counsel did not violate any applicable ethics rules. Defendants contend that they are "unaware of any ethical rule that requires counsel to instruct a client to restrict its communications where the proposed communications themselves are not improper." Defs.' Supp. Opp. Br. at 7 n. 7.

The problem with defendants' argument is that, as explained above, the communications *were* improper because the effect of the notices included with each statement was to undermine the rights of the class members who received them to a full and accurate accounting. By undermining those rights, defendants interfered with the claims that lie at the heart of Phase II of this class action litigation: namely, the claims that all class members are entitled to a corrected historical accounting of their individual accounts after defendants have reformed the management of those accounts such that defendants are in compliance with their fiduciary obligations. The question thus becomes whether defense counsel's "participat[ion] in the efforts to produce these statements of account," which included the improper notices, warrants sanctions under the applicable rules of professional conduct.

Contrary to defendants' arguments, there is ample authority to support the contention that knowing participation in the efforts of a defendant to engage in improper communications with members of a class action litigation constitutes a violation of attorney ethics rules. In *Kleiner,* for example, although defense counsel did not directly communicate with the class members, they advised the defendant bank regarding the legality of its proposed communications and reviewed the proposed format of the communications. *Kleiner,* 751 F.2d at 1197–98. When the district court learned of the unauthorized communications, it held defense counsel in contempt, disqualified him from further participation in the case, and imposed a $50,000 fine against his firm. *Id.* at 1199. The court explained that the charges against counsel were based in part on their violation of Rules 4.2 and 8.4(d) of the Model Rules of Professional Conduct,[9] and concluded that "[b]y actively assisting the Bank in preparing the information to be given to prospective class members, some of which was legal in nature, and organizing the contact system, [counsel] did effectively communicate with persons represented by counsel." *Id.* at 1208–09. Although the contempt sanction was later vacated by the district court, the disqualification and monetary sanctions that it ordered were upheld by the Eleventh Circuit. *Id.* at 1199, 1209–10.

Similarly, in *Impervious Paint Indus. v. Ashland Oil,* 508 F.Supp. 720 (W.D.Ky.1981), *appeal dismissed,* 659 F.2d 1081 (6th Cir. 1981), following certification of the class, one defendant's representatives began contacting class members to discuss the suit. *Id.* at 722. The district court called attention to the fact that the defendant's affidavits "recite[d] that the procedures for contacting the class members were developed 'after consulting with counsel.'" *Id.* After citing Disciplinary Rule DR 7–104 of the Code of Professional Responsibility,[10] the court declared that

[i]t is undisputed that counsel did not personally contact any class member. Neither can we conclude that counsel instructed the corporate officers to begin this educational campaign. However, we believe the circumstantial indications are clear that counsel had full knowledge of

---

9. Rule 8.4(d) provides that "[i]t is professional misconduct of a lawyer to ... engage in conduct that is prejudicial to the administration of justice." The analogous provision in the D.C. Rules of Professional Conduct inserts the word "seriously" before "prejudicial."

10. DR 7–104 is the forerunner of Rule 4.2(a) of the Model Rules of Professional Conduct.

their client's intention to attempt to sabotage the class notice, and, in derogation of their duty as officers of the Court, they did not advise against the course of action. *Id.* at 723. The court ordered that any members contacted by the defendant who had opted out of the class would be restored to the class, and that the members would be sent a special notice informing them that it had found defendant's contacts to be improper. *Id.* at 724.[11]

Additionally, a recent commentator notes that "because a lawyer may not 'violate ... the rules of professional conduct, through the acts of another,' a lawyer may not induce *or assist* a client or others to engage in types of communication with putative class members that the lawyer may not undertake directly." Vincent R. Johnson, The Ethics of Communicating with Putative Class Members, 17 REV. OF LITIG. 497, 506–07 (1998) (emphasis added). The two leading treatises on class action litigation warn against permitting defendants to communicate directly with class members. *See* NEWBERG ON CLASS ACTIONS § 15.19, at 15–59 (3d ed. 1992) ("Unsupervised contacts between defendants and class members ... may result in sanctions for both the offending defendant and, when appropriate, the defendant's counsel."); ANNOTATED MANUAL FOR COMPLEX LITIGATION § 30.24, at 276 (3d ed. 2002) ("Under accepted ethical principles, defendants and their attorneys may communicate on matters regarding the litigation with class members who have not opted out, but only through class counsel.").

It is therefore established, in both the case law and secondary legal commentaries, that participation in the efforts of a defendant to engage in improper contacts with class members can give rise to a violation of Rule 4.2(a).

### 2. Subject Matter of the Representation

Defendants assert that "given the nature of Plaintiffs' claims related to accountings and general trust reform, coupled with the wide scope of Interior's statutorily mandated responsibilities to class members, virtually any communication could be described as 'related to the litigation.'" Defs.' Supp. Opp. Brief at 4. It is true that, in any case, determining precisely what constitutes the "subject matter of the representation" for purposes of the anti-contact rule may sometimes be difficult. However, the American Bar Association has provided a useful gloss on this troublesome phrase, explaining that "Rule 4.2 would not prohibit a lawyer from communicating with a represented person about a matter in which the person is not being represented, if the lawyer has an independent justification for doing so. In this scenario, the person is not 'represented in the matter' for Rule 4.2 purposes." ANNOTATED MODEL RULES OF PROFESSIONAL CONDUCT 403 (4th ed.1999).

It follows from this interpretation that communications occurring in the ordinary course of business between litigants would not constitute communications "about the subject matter of the representation." Thus, for example, the quarterly statements of account distributed by defendants to account holders who are also class members would not implicate Rule 4.2 because defendants possess an independent reason to send out such statements. These statements would be distributed anyway, regardless of the instant litigation. By contrast, defendants have proffered no justification whatsoever for sending notices to class members that have the effect of extinguishing their rights to a full historical accounting. Those rights represent the core of the claims at issue in Phase II of the present litigation, on which the class members are represented by counsel. Attempts to extinguish those rights fundamentally alter the class members' ability to enjoy the benefits of any relief that the Court might order in conjunction with Phase II. It cannot, therefore, be seriously disputed that the improper notices sent to individual class members constitute communications "about the subject matter of the representation."

---

**11.** It is worth noting that in *Impervious Paint,* as in the instant case, no communications ban was in effect at the time of the defendant's contacts with class members, and the contacts were made independently of any regular business contacts. *Id.* at 722.

### 3. Authorization by Law

A demonstration that the communications at issue were "authorized by law" functions as an "affirmative defense" to the strictures imposed by the anti-contact rule. According to the ABA's Committee on Ethics and Professional Responsibility, a communication is "authorized by law" if there exists

> a constitutional provision, statute or court rule, having the force and effect of law, that expressly allows a particular communication to occur in the absence of counsel—such as court rules providing for service of process on a party, or a statute authorizing a government agency to inspect certain regulated premises. Further, in appropriate circumstances, a court order could provide the necessary authorization.

ABA Comm. on Ethics and Prof. Responsibility, Formal Op. 95–306 (1995). Defendants have not pointed to any constitutional provision, statute, court rule, or court order that expressly authorizes the particular communication at issue—namely, a notice that purports to extinguish the rights of class members. Instead, defendants simply allude to the absence of any "local rule, statute or other regulation impos[ing] a blanket prohibition on communication between Interior and the class member account holders." Defs.' Supp. Opp. Br. at 3–4. But the mere absence of prohibition is not tantamount to express authorization. Lacking any such authorization, this Court cannot conclude that the communications at issue were "authorized by law."

### 4. Conclusion

Canon 3B(3) of the Code of Conduct for United States Judges mandates that "[a] judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer." [12] The Court finds that there is reliable evidence to indicate that defense counsel's participation in the efforts to produce the statements of account constituted a violation of Rule 4.2(a). However, because not every violation of the ethics rules deserves punishment, there remains the question as to whether this matter warrants a referral to the Disciplinary Panel for further proceedings.

The Court must take into account the fact that, at the time of their participation, defense counsel was aware that "[s]ome courts and at least one commentator have suggested that attorneys who knowingly permit communications between a party and absent class members violate these rules [Rules 4.2(a) and 8.4(a) of the D.C. Rules of Professional Conduct]." [13] Defs.' 2000 Mot. at 5. Defense counsel was also aware that plaintiffs had filed both a motion and a reply brief asserting that the proposed communications might constitute violations of Rule 4.2(a). Pls.' Consolidated Mot. for a TRO and Prelim. Inj. at 11–12; Pls.' Reply Br. at 4. Nevertheless, defense counsel failed to seek prior authorization from this Court for communications with the class members, as they had done in 2000 and 2001. [14] Instead, they knowingly permitted their clients to include in their letters to over a thousand individual class members a notice that purported to exterminate the rights of those class members to relief on their claims asserted in this

---

12. *Cf.* Canon 3D(2) of the ABA Model Code of Judicial Conduct: "A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct should take appropriate action."

13. Rule 8.4 provides, in relevant part, that "[i]t is professional misconduct for a lawyer to . . . [v]iolate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

14. Ironically, the very same attorneys who entered an appearance on the motion announcing

that defendants were planning to send out the statements of account were the ones who, less than a year before, had filed the motion seeking an order from this Court finding that defense counsel's involvement in the second public administrative process would not violate Rule 4.2(a). *Compare* Interior Defs.' Emergency Mot. for Entry of an Order Clarifying Ethical Obligations of Attorneys Regarding Public Administrative Process [1055], at 6 *with* Interior Defs.' Mot. and Supporting Mem. for Order Permitting the Provision of Historical Statements of Account to Class Counsel [1471], at 2.

litigation. The Court finds troubling the fact that defense counsel did not object to either of the two mass mailings to class members, the second of which coincided with the date this Court noticed a hearing on plaintiffs' motion for an order proscribing such communications with class members. In the face of such misconduct, it would be an act of negligence for this Court to stand idly by.

Accordingly, it is hereby ORDERED that plaintiffs' request for entry of an order pursuant to Rule 23(d) [1651–1] be, and hereby is, GRANTED. It is further

ORDERED that, pursuant to Rule 23(d) of the Federal Rules of Civil Procedure, during the pendency of the instant litigation, the parties to the litigation, their agents and officials, and their counsel shall not communicate, through the United States mail or any other mode of communication, with any class member in this litigation regarding this litigation or the claims involved therein, except as specifically permitted by order of this Court. This restriction includes, but is not limited to, any communications that affect the rights of class members to a full and accurate accounting of their Individual Indian Money trust accounts.

The instant Order does not prohibit defendants from communicating with class members in the ordinary course of business on routine matters unrelated to the instant litigation. It is further

ORDERED that plaintiffs' motion for a preliminary injunction [1534–2] be, and hereby is, DENIED as moot, in light of the relief provided above under Rule 23(d). It is further

ORDERED that, pursuant to Rule 83.16(d)(2) of the Rules of the U.S. District Court for the District of Columbia, this matter shall be referred to the Committee on Grievances of the U.S. District Court for the District of Columbia for an investigation of the conduct of defense counsel who appeared on defendants' Motion and Supporting Memorandum for Order Permitting the Provision of Copies of Historical Statements of Account to Class Counsel (filed on September 10,

2002)[15] and any other attorneys that the Committee determines to have been involved in connection with the improper transmission of the statements of account, and for such further proceedings as it may deem appropriate.

SO ORDERED.

---

**15.** The attorneys who appeared on this motion are Robert D. McCallum, Stuart E. Schiffer, J. Christopher Kohn, Sandra P. Spooner, John T. Stemplewicz, and Cynthia L. Alexander.