Wendy **MCWILLIAMS**, individually
and on behalf of others similarly
situated, Plaintiff

v.

**ADVANCED RECOVERY SYSTEMS,
INC.; Young Wells Williams,
P.A.,** Defendants

and

**Kristi McHale; Chris Falgout,**
Respondents

**CAUSE NO. 3:15–CV–70–CWR–LRA**

United States District Court,
S.D. Mississippi,
**Northern Division.**

Signed March 31, 2016

636

Michael L. Greenwald, Greenwald Davidson Radbil, PLLC, Boca Raton, FL, Shireen Hormozdi, Krohn and Moss, Ltd., Los Angeles, CA, for Plaintiff.

William V. Westbrook, III, Page, Mannino, Peresich, & McDermott, PLLC, Gulfport, MS, Charles Greg Copeland, Laurie R. Williams, Copeland, Cook, Taylor & Bush, PA, Ridgeland, MS, for Defendants.

## MEMORANDUM OPINION AND PROTECTIVE ORDER

Carlton W. Reeves, UNITED STATES DISTRICT JUDGE

Before the Court is the plaintiff and defendants' joint motion for protective order. A hearing was held with all involved and the matter is ready for adjudication.

### I. Factual and Procedural History

This is a class action in which Wendy McWilliams claims Advanced Recovery Systems and the Young Wells Williams law firm violated the Fair Debt Collection Practices Act (FDCPA). *See* 15 U.S.C. §§ 1692 *et seq.* The Court previously heard and resolved a substantial motion to dismiss. *McWilliams v. Advanced Recovery Sys., Inc.*, 108 F.Supp.3d 456 (S.D.Miss.2015). Now pending are cross-motions for summary judgment. While the summary judgment motions were pending, the class was certified on November 3, 2015. *McWilliams v. Advanced Recovery Sys., Inc.*, 310 F.R.D. 337 (S.D.Miss.2015).

After certification, counsel for plaintiff and defendants—both experienced class action litigators—notified the Court of an unexpected development. On December 14, 2015, attorney Kristi McHale had sent a solicitation letter to named plaintiff and class representative McWilliams. It stated, in relevant part,

> Our investigation has revealed that the Young Wells Williams law firm may have violated several portions of the Fair Debt Collection Practices Act (FDCPA) in their attempt to collect on these accounts. In fact, a class action has been certified in the United States District Court of Mississippi for all people sued between February 4, 2014 and February 4, 2015.

The letter went on to propose a contingency fee arrangement in which McHale Law, PLLC would represent McWilliams against ARS and YWW. A blank contingency fee contract and new client intake form were enclosed. McHale concluded, "I look forward to working for you in protecting your rights."

Counsel for McWilliams responded on December 21, advising McHale that she had communicated with a represented party and also communicated with class members, allegedly in violation of the Federal Rules of Civil Procedure. Counsel requested an accounting of the solicitations.

On December 23, McHale responded directly to McWilliams, copying counsel, to "apologize for any confusion this letter

may have caused concerning *your* representation of your cause of action." She did not describe her other solicitations or send a separate response to McWilliams' attorney addressing his concerns about other class members.

The present motion followed. In it, the plaintiff and defendants initially sought a protective Order preventing third-party attorneys from soliciting or communicating with class members. McHale did not respond to the motion, but she attended a hearing held on the motion and permitted her attorney, Robert Compton, to present argument on her behalf. Attorney Chris Falgout of the Jordan & Falgout firm also participated in the hearing since, as it became clear, he had sent similar solicitations to class members located in his area of Mississippi.

The hearing revealed several facts of interest. McHale's counsel represented that she had sent solicitation letters to approximately 120 residents of Hinds County. Falgout stated that he had sent approximately 90 such letters to residents of Lauderdale County. Falgout then argued that his solicitations were justified because he was presently defending an existing client, George Clayton, in an ARS debt collection suit pending in Lauderdale County. McHale and Falgout also disclosed that in January 2016, they sent the class members they had retained a "curative letter" which attempted to clarify the situation and offered clients a 10–day window in which to cancel their representation agreement. A copy was provided to the Court for in camera inspection that day.

All of the involved attorneys conferred several days later. McHale and Falgout shared a copy of their January 2016 "curative letter" with counsel for plaintiff and defendants. McHale and Falgout also revealed that their solicitations had resulted in them signing up approximately 50 class members as clients.

Aggrieved by these developments, counsel for plaintiff filed a supplemental brief requesting an Order invalidating McHale and Falgout's representation agreements with the 50 or so class members. McHale and Falgout subsequently responded with a brief on the merits.

Having considered all of the arguments made at the hearing and in the papers, the Court is ready to rule.

## II. Legal Standard

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). "The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

Class actions, however, also present "opportunities for abuse." *Bernard*, 452 U.S. at 100, 101 S.Ct. 2193. The Supreme Court has noted the potential for "heightened susceptibilities of nonparty class members to solicitation amounting to barratry." *Id.* at 100 n.12, 101 S.Ct. 2193 (quotation marks and citation omitted). That is a polite way of saying that attorneys who want to cut into the class action may try to steal away class members and then bring separate, wasteful lawsuits.[1] Another potential problem the Supreme Court flagged is how "unapproved communications to class members that misrepre-

---

1. *Accord In re Community Bank of N. Virginia*, 418 F.3d 277, 315 (3d Cir.2005) ("Simply put, those law firms have a pecuniary interest in soliciting opt-outs or objectors; the greater number of opt-outs or objectors, the less likely the proposed settlement will survive, and the more likely that the law firms will have the opportunity to bring their own suits in search of lucrative attorney fees.").

sent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice." *Id.* (quotation marks, citation, and brackets omitted).

■ "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.* at 100, 101 S.Ct. 2193; *see Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 331, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (district courts have the responsibility to protect absent class members). This common-sense principle is also reflected in Federal Rule of Civil Procedure 23, which in its current form provides the following:

> In conducting an action under this rule, the court may issue orders that: (A) determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument; (B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of: (i) any step in the action; ... (C) impose conditions on the representative parties or on intervenors; ... or (E) deal with similar procedural matters.

Fed. R. Civ. P. 23(d)(1).

■ For class actions such as today's, in fact, the Rule also states that "*the court must direct to class members the best notice that is practicable under the circumstances*" to explain in plain language certain facts about the case. *Id.* at 23(c)(2)(B) (emphasis added); *see In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1104 (5th Cir.1977). It is the Court which approves the notice, and not the lawyers,

because the judiciary has the duty to "avoid[ ] a multiplicity of duplicative suits," "expedite disposition of the action," and protect the public. *Sperling,* 493 U.S. at 172, 110 S.Ct. 482.

### III. Discussion

#### A. Applicable Rules

We begin with the obvious. An attorney who wishes to poach members of a certified class action should probably not attempt to poach the named plaintiff and class representative. Mississippi Rule of Professional Conduct 4.2 prohibits lawyers from communicating with a represented party about the subject of the representation. The detailed requirements of Federal Rule of Civil Procedure 23 present another set of challenges. And, purely from a tactical perspective, poaching risks the recipients sending the solicitations to their attorneys, sparking a larger conflagration. That is exactly what happened here.

■ McHale's solicitation letter to McWilliams plainly violated Rule 4.2. The violation was knowing and willful. The solicitation letter shows actual knowledge that there was a pending class action lawsuit in this Court on the FDCPA claim, and that the class had been certified. Since McWilliams' full name is in the case caption, McWilliams was obviously a represented party and the class representative.

McHale was put on notice of the violation on December 21. Yet just two days later she sent a second letter directly to McWilliams. This was another communication with a represented party about the representation, in violation of Rule 4.2.

■ McHale's solicitation also violated Federal Rule of Civil Procedure 23.[2] She

---

**2.** The record lacks documentary evidence of Falgout's actions. Based on his representations in the hearing and his response brief, however, his actions also violated professional

and procedural rules. Any of the parties or respondents may make a better record and

communicated with class members without Court approval, without the information required by Rule 23(c)(2)(B), and without considering, as just one example, that her contingency fee schedule was ultimately subject to Rule 23(h). *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.Supp.2d 1239, 1245 (N.D.Cal.2000). Among other things, recipients of her solicitation may have concluded that they were definitively members of the class (given the language *"You fit in this class"*), that hiring McHale was the only way to recover damages, or that McHale was class counsel. The first conclusion is debatable; the second and third conclusions are false. "The letters also significantly fail to disclose that the Court has appointed Class Counsel to represent Class members." *Jack Faucett Associates, Inc. v. Am. Tel. & Tel. Co.*, No. 81–0436, 1985 WL 25746, at *2 (D.D.C. Oct. 18, 1985). Given this last failure, it was disingenuous for McHale to say that she would "work[ ] for you in protecting your rights," since *McWilliams' counsel* was the one who had actually incurred the time and expense in protecting class members' rights, and was obligated to protect their rights.

McHale's action was contrary to the text and purpose of Rule 23. Solicitations encouraging members of a certified class to opt-out and bring separate lawsuits risk defeating the efficiency inherent in the class action form. It is likely for this reason that both plaintiff *and defendants* seek the Protective Order. (Counsel for the defendants aptly summarized McHale's actions as "raiding the class.") The Court finds that McHale's solicitation was misleading, has unduly complicated this proceeding, and will cause additional complications as the case progresses.

McHale erred again when she sent a second, so-called "curative" letter to class members. This letter also did not comply

with Rule 23. It was not approved by the Court, did not contain the information required by the rule, and contained extra information the Court would not have approved, such as a 10–day opt-out window. *See McKesson*, 126 F.Supp.2d at 1245 (finding "arbitrary deadline" in solicitation to putative class members "troubling").

It was particularly egregious for McHale to send class members another letter while a motion for protective order concerning this very issue was pending. To borrow the Eleventh Circuit's phrasing, McHale's "solicitations scheme relegates the essential supervision of the court to the status of an afterthought ... [and] obstructed the district court in the discharge of its duty to protect both the absent class and the integrity of the judicial process by monitoring the actions before it." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985) (quotation marks and citations omitted).

**B. Respondents' Arguments**

Against all this, McHale and Falgout press that they have done "absolutely nothing illegal or unethical." Between the hearing and their brief they have argued, with varying degrees of commitment, that: (1) this Court lacks jurisdiction over them because they were never served with a summons and complaint; (2) class counsel does not represent all class members; (3) their actions were proper because Falgout represents an individual in a state-court debt collection suit; (4) the First Amendment protects their right to send commercial solicitations to absent class members; (5) class counsel has not adequately done his job; and (6) class members have state law and regulatory claims outside the scope of the class action, on which McHale and Falgout can provide representation.

seek specific findings as to Falgout, if they choose.

The first five arguments lack arguable merit.

### 1. Jurisdiction

 Rule 23 and Supreme Court precedent give this Court jurisdiction to protect class members and impose appropriate conditions on intervenors. *See Bernard,* 452 U.S. at 100, 101 S.Ct. 2193. McHale and Falgout invaded this class action by sending solicitation letters to members of a certified class. They were not invited. In fact, they acted like vultures. They capitalized on the work that had been done by class counsel and hunted for eligible class members by scouring the state court records. They did not have to expend effort in creating the theory of recovery; they merely had to find those who had been sued by ARS and YWW. They brought themselves within the scope of Rule 23 and this Court's jurisdiction.[3]

### 2. Representation

 Upon certification, class counsel *does* represent absent class members. That is the point of being "class counsel." It follows that it *is* unethical for other attorneys to communicate with class members about the representation after the class has been certified. As one treatise explained,

With respect to post-certification communications, the great majority of decisions hold that absent class members are represented by class counsel so that, in accordance with ethical rules prohibiting ex parte communications with persons represented by counsel, defense

counsel cannot communicate with class members outside the presence of class counsel. The relationship attaches upon entry of an order certifying a class and does not await the expiration of any opt-out period.

2 McLaughlin on Class Actions § 11:1 (12th ed.) (collecting cases) [hereinafter McLaughlin]; *see also Kleiner,* 751 F.2d at 1207 n. 28 ("At a minimum, class counsel represents all class members as soon as a class is certified."); *Gortat v. Capala Bros.,* No. 07–CV–3629, 2010 WL 1879922, at *2 (E.D.N.Y. May 10, 2010) ("In other words, class certification gives rise to an attorney-client relationship between potential class members and class counsel."); *Cobell v. Norton,* 212 F.R.D. 14, 21 (D.D.C. 2002) ("Contrary to defendants' arguments, there is ample authority to support the contention that knowing participation in the efforts of a defendant to engage in improper communications with members of a class action litigation constitutes a violation of attorney ethics rules."); *Resnick v. Am. Dental Ass'n,* 95 F.R.D. 372, 376 (N.D.Ill.1982) ("Without question the unnamed class members, once the class has been certified, are 'represented by' the class counsel."); Federal Judicial Center, Manual for Complex Litigation (Fourth) § 21.33, *available at* 2004 WL 258812 ("Once a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel.").

---

3. Rule 23 aside, McHale and Falgout are subject to this Court's jurisdiction in other ways. They are obviously officers of the Court subject to this Court's admission criteria, practice rules, and disciplinary authority. *See Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) ("The power of a court over members of its bar is at least as great as its authority over litigants."). Also, *if* McHale and Falgout were to execute their plan, withdraw their clients from the certified class, and bring a separate FDCPA lawsuit against the defendants, the suit would be filed in this Court and heard by this Judge as a related case. It is perhaps for these practical reasons that McHale and Falgout's brief backed away from their earlier position that this Court lacked authority to enjoin their solicitations.

McHale and Falgout's proffered authorities on this point, meanwhile, do not support their argument. McHale and Falgout imply that there is no attorney-client relationship between class counsel and absent class members, when in truth an attorney-client relationship exists, even if it is non-traditional. *See In re Community Bank of N. Virginia*, 418 F.3d 277, 313 (3d Cir. 2005) ("courts have recognized that class counsel do not possess a traditional attorney-client relationship with absent class members"); McLaughlin § 11:1 (compiling differences between class counsel's duties toward the class representative and class counsel's duties toward absent class members). McHale and Falgout then suggest that communications with putative class members are held to the same standard as communications with members of a certified class. Case law says otherwise. *See McKesson*, 126 F.Supp.2d at 1245 (concluding that there was no "inviolate attorney-client relationship" between class counsel and members of the *putative* class). And they cite cases which explicitly decline to address the argument McHale and Falgout advance. *See, e.g., In re Shell Oil Refinery*, 152 F.R.D. 526, 528 n. 2 (E.D.La.1989) ("The nature of the relationship between the PLC and the class members after class certification but prior to expiration of the exclusion period *is not before the Court*.").

After considering the case law on this issue, the Court sees no reason to deviate from the great majority of decisions. Class certification in November 2015 rendered McHale and Falgout's subsequent communications with class members unethical, in violation of Mississippi Rule of Professional Conduct 4.2.

---

4. McHale and Falgout also contend that defense counsel has been contacting class members without Court approval. Their support for this claim is a letter from Young Wells

### 3. The State Court Client

■ It is difficult to take seriously Falgout's contention that he was permitted to poach members of a certified class because he represents one potential class member, George Clayton, in state-court litigation. ARS filed the debt collection suit against Clayton in April 2014. Clayton apparently retained Falgout to defend him.

Despite having represented Clayton for well over a year before this class was certified, though, Falgout never raised a FDCPA claim or counterclaim on Clayton's behalf. During the motion hearing in this case, in fact, Falgout admitted that there was no trial date set, that ARS had propounded minimal discovery, that the parties were still "working through" ARS's motion to compel, and that Falgout had not propounded *any* discovery on his client's behalf.

Far from supporting his arguments in this suit, therefore, Falgout's "representation" of Clayton through 2014 and 2015 gives every indication of a complete lack of interest in pursuing a FDCPA claim against the defendants.[4] It certainly does not justify sending FDCPA solicitation letters to members of a certified FDCPA class action.

### 4. The First Amendment

■ The First Amendment does not protect attorneys who use misleading solicitations to raid a certified class. As a general matter, "[t]he government may ban misleading commercial speech." *Pruett v. Harris Cnty. Bail Bond Bd.*, 499 F.3d 403, 409 (5th Cir.2007). "Misleading communications by lawyers are not only constitutionally unprotected, but are prohibited by" the Rules of Professional Con-

---

Williams to Falgout, as counsel for Clayton, to seek hearing dates in the state court suit. They have not explained how the communication violates Rule 23.

duct. *In re WorldCom, Inc. Sec. Litig.*, No. 02–CV–3288, 2003 WL 22701241, at *8 (S.D.N.Y. Nov. 17, 2003). In this case, Mississippi Rules of Professional Conduct 7.1 and 7.4 prohibit McHale and Falgout from making misleading communications.

Although the First Amendment's protection of commercial speech was invoked at the motion hearing, McHale and Falgout's brief essentially abandons the argument. It cites case law which provides that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Bernard*, 452 U.S. at 101, 101 S.Ct. 2193. But that standard has nothing to do with the First Amendment. The *Bernard* court explicitly avoided wading into the First Amendment. *Id.* at 101 n. 15, 101 S.Ct. 2193.

Nevertheless, any Order this Court issues in this matter will be appropriately tailored to the violations at hand and in line with remedial measures applied in similar cases, such that the First Amendment is satisfied. *See Kleiner*, 751 F.2d at 1206 ("The trial court's order was narrowly drawn to avoid suppressing utterances worthy of first amendment protection.").

### 5. Class Counsel

■ McHale and Falgout are incorrect to blame their solicitation letters on class counsel. The parties had refrained from sending a Class Notice because they were awaiting a ruling on their cross-motions for summary judgment. They are commended for their pragmatism. And, although a Class Notice was just approved by the Court, one of its primary purposes now is to explain to laypersons why they received solicitations from McHale and Falgout. If the defendants' motion for summary judgment proves meritorious, it may not have been necessary to send *any* Class Notice in this case, but for McHale and Falgout's actions. The claim of inadequate representation is simply a red herring.

### 6. Continued Representation

■ Finally, McHale and Falgout argue that they should be permitted to represent class members with state law or regulatory claims against the defendants. While lacking in specifics of how the purported state law remedies would work (and omitting any mention of regulatory remedies), their brief suggests that they could move to reopen or set aside state-court judgments obtained via the defendants' allegedly confusing and misleading summons. Recall that Count III of the class action complaint argues that the defendants' summons violated the FDCPA.

On one hand, the Court is fairly convinced that McHale and Falgout's sudden interest in state law and regulatory claims is an afterthought. The only cause of action mentioned in McHale's solicitation letter was the FDCPA. If other theories were so compelling one thinks they would have been mentioned.

On the other hand, the Court does not want to prevent McHale and Falgout from providing a non-duplicative service, *if* one exists that would not unduly interfere with this action or confuse class members. Additional briefing may be necessary if the parties and respondents cannot agree on an appropriate plan for moving forward.

For these reasons, the motion is granted.

## IV. Conclusion

The following Protective Order is effective immediately:

Respondents McHale and Falgout, and their associated law firms, partners, associates, employees, and agents, etc., are hereby prohibited from further oral or written communications with members of

the certified class, regarding either ARS/YWW's debt collection efforts against class members or state/federal/regulatory claims against ARS/YWW. This restriction does not apply to class members who entered into representation agreements with respondents before the class was certified. *See Community Bank*, 418 F.3d at 314 ("To be sure, there is a distinction between the unilateral action of a class member who seeks the advice of outside counsel, often his or her prior counsel, and the unsolicited communications from outside counsel designed to disrupt a proposed settlement."); *McKesson*, 126 F.Supp.2d at 1245 n. 6 ("The court distinguishes between solicited clients and those clients (if any) who on their own initiative retained Much Shelist prior to its solicitation campaign."). The communication restriction shall be effective until entry of Final Judgment or Judgment on Jury Verdict in this case.

Within 10 days, respondents shall provide class counsel, defense counsel, and the Court a detailed accounting of respondents' solicitation activities.[5]

Within 30 days, class counsel and defense counsel shall prepare and submit to the Court, for its review, a proposed Notice or Notices which can be sent to (a) recipients of respondents' solicitations, (b) class members who retained respondents after the class was certified, or (c) both groups. *See Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 674–76 (E.D.Tex.2003); *McKesson*, 126 F.Supp.2d at 1246. Respondents shall bear reasonable printing and mailing costs.

Respondents shall be responsible for reasonable attorney's fees and costs incurred by class counsel and defense counsel in briefing, arguing, and enforcing this motion and Protective Order. Within 45 days, class counsel and defense counsel shall submit appropriate proof of their attorney's fees. *See Hervey v. Keltman Pharm., Inc.*, No. 3:12–CV–625, 2015 WL 4673773, at *2 (S.D.Miss. Aug. 6, 2015); *M.B. ex rel. Bedi v. Rankin Cnty. Sch. Dist.*, No. 3:13–CV–241, 2016 WL 1077833 (S.D.Miss. Mar. 17, 2016). The Court reserves the right to impose additional sanctions. *See Kleiner*, 751 F.2d at 1199.

Within 30 days, the parties and respondents shall confer to discuss the extent to which retainer agreements entered into after class certification should be voided. The Court is inclined to invalidate all of them, for prosecution of FDCPA claims at a minimum, unless the parties and respondents can arrive at a satisfactory resolution by mutual agreement.[6] *See* McLaughlin § 11:1.

The Court specifically finds that the terms of this Protective Order are necessary to protect class members in accordance with Rule 23 and to deter future violations of the Mississippi Rules of Professional Conduct.

**SO ORDERED**, this the 31st day of March, 2016.

---

5. A proper accounting shall include, at a minimum, the name and address of each individual to whom counsel sent any solicitation, and disclose whether any documents responsive to the solicitation letter(s) were received from those individuals.

6. In *McKesson*, for example, one of the soliciting law firms withdrew from the dispute.

126 F.Supp.2d at 1242 n. 2 ("Milberg Weiss wrote a letter to the solicited clients who retained the firm, advising them that it was satisfied that lead plaintiff 'will vigorously represent class members' ... and 'releasing them from any obligations to the Milberg Weiss firm.' ").