Elouise Pepion COBELL, et al., on her own behalf and on behalf of all persons similarly situated, Plaintiffs,

v.

Gale NORTON, Secretary of the Interior, et al., Defendants.

No. CIV.A.96–1285(RCL).

United States District Court, District of Columbia.

Sept. 29, 2004.

**42**

Earl Old Person, pro se.

Eddie Jacobs, Oklahoma City, OK, pro se.

Albert Lee Bynum, Gadsden, AL, pro se.

Alan Lee Balaran, Washington, DC, pro se.

Dennis M. Gingold, Elliott H. Levitas, Kilpatrick Stockton, LLP, Mark Kester Brown, Keith M. Harper, Richard A. Guest, Native American Rights Fund, Washington, DC, for Plaintiffs.

Andrew M. Eschen, Brian L. Ferrell, Charles Walter Findlay, III, Edith R. Blackwell, Sarah D. Himmelhoch, Tom C. Clark, U.S. Department of Justice Land & Natural Resources Division, Robert D. Luskin, Patton Boggs LLP, Sandra Marguerite Schraibman, Henry A. Azar, Jr., Jonathan Brian New, U.S. Department of Justice Federal Programs Branch, Lewis Steven Wiener, Sutherland, Asbill & Brennan, L.L.P., Cynthia L. Alexander, David J. Gottesman, J. Christopher Kohn, Sandra Peavler Spooner, U.S. Department of Justice Commercial Litigation Branch, John Thomas Stemplewicz, Seth Brandon Shapiro, Phillip Martin Seligman, U.S. Department of Justice Ben Franklin Station, Civil Division, Mark E. Nagle, Robert Craig Lawrence, U.S. Attorney's Office Judiciary Center Building, Jennifer R. Rivera, Dodge Wells, John Joseph Siemietkowski, Michael John Quinn, Timothy Edward Curley, John Thomas Stemplewicz, U.S. Department of Justice, Gino D. Vissicchio, Tracy Lyle Hilmer, U.S. Department of Justice Civil Division, John R. Kresse, John Warshawsky, U.S. Department of Justice Commercial Litigation Branch, Civil Division, Christina M. Carroll, Daniel Gordon Jarcho, Michael James Bearman, Mckenna, Long & Aldridge, LLP, Elizabeth Wallace Fleming, Trout & Richards, P.L.L.C., B. Michael Rauh, Manatt, Phelps & Phillips, L.L.P., Herbert Lawrence Fenster, McKenna, Long & Aldridge, LLP, Denver, CO, John Charles Cruden, U.S. Department of Justice Environment and Natural Resources, Annandale, VA, for Defendants.

Lawrence H. Wechsler, Janis, Schuelke & Wechsler, Donald Michael Barnes, Porter, Wright, Morris & Arthur, David Booth Beers, Shea & Gardner, Pamela J. Marple, Manatt, Phelps & Phillips, L.L.P., Timothy Patrick Garren, U.S. Department of Justice Civil Rights Division, Erik Lloyd Kitchen, Steptoe & Johnson, L.L.P., Martha Purcell Rogers, Ober, Kaler, Grimes & Shriver, Amy Berman Jackson, Trout & Richards, P.L.L.C., Michael R. Bromwich, Fried, Frank, Harris, Shriver & Jacobson, Roger Eric Zuckerman, Leslie B. Kiernan, Zuckerman Spaeder, LLP, Kathleen Elizabeth Voelker, Stephen M. Byers, Crowell & Moring, L.L.P., L. Barrett Boss, Asbill, Moffitt & Boss, Chartered, John Francis Hundley, Plato Cacheris, Baker & McKenzie, Sydney Jean Hoffmann, The Law Offices of Plato Cacheris, Barbara Ann Van Gelder, Wiley Rein & Fielding, LLP, Laura C. Zimmitti, Marc Evan Rindner, William H. Briggs, Jr., Ross, Dixon & Bell, LLP, Thomas Edward Wilson, Berliner, Corcoran & Rowe, L.L.P., Mary Lou Soller, Miller & Chevalier, Chartered, Jeffrey David Robinson, Melissa Heitmann Mcniven, Dwight Phillip Bostwick, Baach, Robinson & Lewis, John Albert Gibbons, Steven John Roman, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Lisa Ann

Freiman Fishberg, Coburn & Schertler, E. Lawrence Barcella, Jr., Paul, Hastings, Janofsky & Walker, L.L.P., Alessio D. Evangelista, David Sidney Krakoff, Beveridge & Diamond, P.C., Michael D. Goodstein, Resolution Law Group, PC, Bradley Stuart Lui, Morrison & Foerster, LLP, Andrew Dewald Herman, Stanley M. Brand, Brand & Frulla, P.C., Marshall L. Matz, Olsson, Frank & Weeda, P.C., Brian Michael Privor, William Leonard Gardner, Morgan, Lewis & Bockius, L.L.P., Hamilton Phillips Fox, III, Sutherland, Asbill & Brennan, L.L.P., Christopher J. Lovrien, Robert Christopher Cook, Dennis M. Gingold, Robert A. Salerno, Piper Rudnick LLP, George Joseph Hughes, Hughes & Bentzen, PLLC, Bruce Allen Baird, Michael X. Imbroscio, Nicole Jo Moss, Covington & Burling, Jonathan K. Tycko, Tycko Zavareei, LLP, Richard Lee Cys, Davis Wright Tremaine, Christopher B. Mead, London & Mead, Jill Elise Grant, Nordhaus, Haltom, Taylor, Taradash & Y Bladh, LLP, Washington, DC, William Aaron Dobrovir, Sperryville, VA, Larry Allen Nathans, Robert W. Biddle, Bennett & Nathans, L.L.P., Baltimore, MD, John Kenneth Zwerling, Lisa Bondareff Kemler, Zwerling & Kemler, P.C., Alexandria, VA, Emily M. Yinger, Hogan & Hartson Commercial Practice Group, McLean, VA, Neil James Ruther, Towson, MD, for Movants.

Amy S. Koch, Cameron McKenna, Charles Allen Hobbs, Hobbs, Straus, Dean & Walker, Washington, DC, Jason B. Aamodt, Stephen R. Ward, Conner & Winters, P.C., Tulsa, OK, Geoffrey D. Strommer, Hobbs, Sraus, Dean & Walker, Portland, OR, for Amici.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the Court on the plaintiffs' motion for a preliminary injunction [2646], filed August 25, 2004. Oral argument was heard on August 31, 2004, at which time a temporary restraining order was granted; and the Court ordered the Interior defendants to submit a supplemental memorandum in opposition to the plaintiffs' motion, and the plaintiffs to submit a supplemental reply. The Interior defendants submitted their supplemental memorandum on September 8, 2004; the plaintiffs filed their supplemental reply on September 15, 2004.

In their supplemental reply memorandum, the plaintiffs discuss the Court's Order of December 23, 2002 (the "2002 Order"), which was issued pursuant to Rule 23(d) of the Federal Rules of Civil Procedure. They argue that the standard for relief under that rule, a "likelihood of serious abuses," is applicable and controlling of the current issue before the Court. Pl.'s Supp. Reply in Support of Mot. For Prelim. Inj., at 15–16. They also argue that the conduct of the Interior defendants giving rise to this dispute violates the 2002 Order. Given the arguments of the plaintiffs and the procedural posture of the case and current motion, the Court will treat the discussion in plaintiff's supplemental reply memorandum as a request that the Court find that Interior is in violation of the 2002 Order and for relief under Rule 23(d) as an alternative to a preliminary injunction.

Federal Rule of Civil Procedure 23(d) grants a district court presiding over a class action the authority to "impos[e] conditions on the representative parties" in order to prevent interference with the rights of class members and to protect the integrity of the class and of the proceedings. *Cobell v. Norton*, 212 F.R.D. 14, 20 (D.D.C.2002); *see* FED. R. CIV. P. 23(d). Even if the plaintiffs had not impliedly requested this alternative relief, it is the Court's "duty" to issue a Rule 23(d) order to protect the integrity of the class action and the rights of class members. *See Jack Faucett Assocs., Inc. v. AT & T Co.*, 1985 WL 25746 at *5 (D.D.C.1985). Additionally, it is unquestionably within the power of the Court to enforce its 2002 Order against Interior if the Court finds that it has been violated.

Upon consideration of plaintiffs' motion, opposition thereto, the arguments of counsel, the applicable law, and the record in this case, the Court finds that the plaintiffs' motion for preliminary injunction should be DENIED AS MOOT, in light of the Court's conclusion that the Interior defendants have violated the 2002 Order and the relief granted. On the basis of this conclusion, a supple-

ment to the 2002 Order shall issue pursuant to Federal Rule of Civil Procedure 23(d).

## I. BACKGROUND

On September 20, 2002, the plaintiffs moved for a preliminary injunction to preclude the defendants' ongoing communications with members of the plaintiff class in the form of mailings from the Department of the Interior to individual Indians containing "Historical Statements of Account." These communications, the plaintiffs alleged in their motion, interfered with the rights of class members, beneficiaries of Individual Indian Money Trust Accounts ("IIM Accounts"), to receive a full and accurate accounting of their trust accounts from the Trustee Delegates, the Departments of the Interior and the Treasury. After hearing oral argument and requesting supplemental briefing, this Court granted the plaintiffs' amended motion for an order under Rule 23(d) of the Federal Rules of Civil Procedure that prevented the Interior defendants from communicating with class members regarding "this litigation, or the claims that have arisen therein, without the prior authorization of this Court." *Cobell v. Norton*, 212 F.R.D. 14, 20 (D.D.C.2002). The Court explained that "[t]his restriction includes, but is not limited to, any communications that affect the rights of class members to a full and accurate accounting of their Individual Indian Money trust accounts." *Id.* at 24.

The 2002 Order was issued to prohibit the Interior defendants' practice of mailing historical statements of account to individual Indian trust beneficiaries that contained the following language:

> If you have concerns about the Historical Statement of Account included with this letter or if you believe it is in error, you may wish to file a challenge with OHTA [the Office of Historical Trust Accounting] . . . . **If you do not challenge the historical account statement or request an extension within 60 calendar days of the postmark on the envelope containing this letter, the enclosed Historical Statement of Account will be final and cannot be appealed**. . . . You may appeal OHTA's final response to the Interior

Board of Indian Appeals (IBIA) by filing a Notice of Appeal with the IBIA within 30 calendar days of the date you receive OHTA's response. [emphasis in original].

The Court found that the mailings, all of which included this language, had "the effect of extinguishing the class members' rights to a full and accurate accounting after defendants have 'fixed the system.' " *Cobell*, 212 F.R.D. at 17. On the basis of that finding, the Court entered the Rule 23(d) order restricting future communications of this nature.

On July 30, 2004, the Department of the Interior's Anadarko Agency, a division of the Bureau of Indian Affairs ("BIA") that administers some of the Indian land that comprises the corpus of the trust, distributed an invitation to bid on 26 parcels of land in Oklahoma owned by Indian tribes and individual Indians at an auction to be held on September 1, 2004. Pl.'s Mot. for Prelim. Inj., Ex. 1 ("INVITATION FOR BIDS—SALE OF INDIAN LANDS") ("Invitation No. 69"). The parcels that were to be sold are situated in Caddo, Comanche, Cotton, Kiowa, Tillman, and Grady Counties. Fifty-eight individual Indian owners of trust lands filed 70 applications for sale of portions of the various parcels listed in Invitation No. 69. Upon learning of the pending sale, the plaintiffs filed their motion for a temporary restraining order and preliminary injunction. The Court granted the TRO pending a decision on the preliminary injunction, and the auction scheduled for September 1 was subsequently canceled by Interior. Def.'s Supp. Mem. in Opp., Ex. 4.

Invitation Number 69 is an example of one way in which Interior sells Indian lands—by sealed-bid auction. This is not, however, the only way. First, under the same regulatory provision that authorizes sale of Indian land by auction, Interior may also broker negotiated sales of Indian land; and land owners may enter into transfers of Indian trust land in the form of gifts, other exchanges, or conversion to fee patent for retention or sale. Additionally, under the Indian Land Consolidation Act of 2000, 25 U.S.C. §§ 2201–09, and Interior's Indian Land Consolidation Plan enacted pursuant to that statute, Interior

may acquire land from individual Indian owners to consolidate fractional ownership interests and thereby "lessen the number of owners." *See* Def.'s Supp. Mem. in Opp. At 17 n. 18; Dept. of Int. Stat. Rep. to Ct. No. 13, at 79 (May 2003).

As of the date that Invitation Number 69 was issued, 93,184 allotted land interests had been sold by their holders through Interior's Indian Land Consolidation Plan. Dept. of Int. Stat. Rep. to Ct. No. 18, at 53 (Aug. 2, 2004). Interior recently conducted a survey that showed some 1,660 or more applications for sale of an interest in allotted land that have been approved by the Secretary pursuant to the regulations governing sales by auction or negotiation, but that have not yet been sold. *See* Goodwin Decl. ¶ 6. Roughly 5 percent (around 80) of these approved applications are for sale by bid invitation, with the rest set for negotiated sale. *Id.*

Sales of allotted land interests by auction or negotiation are governed by provisions set out in 25 C.F.R. § 152. Part 152 allows individual Indians to file formal applications with Interior for the sale of trust land. 25 C.F.R. § 152.18. Part 152 allows for the sale of trust land by bid invitation or negotiated sale brokered by Interior, *see* 25 C.F.R. §§ 152.25, 152.26, as well as by exchange, other conveyance, or conversion to fee patent with the approval of the Secretary. *See* 25 C.F.R. §§ 152.17; 152.4. All sales of Indian lands under Part 152 require approval of the Secretary. *See* 25 C.F.R. §§ 152.4; 152.17; 152.23. For a sale, exchange, or other conveyance, approval may be obtained: (1) from the Secretary for action by the owner; or (2) from the owner for action by Interior. 25 C.F.R. § 152.17. Fee patent conversion also requires approval by the Secretary. 25 C.F.R. § 152.4.

For sale by negotiated contract or auction, as in the case of Invitation No. 69 discussed above, the individual Indian owner must submit a special application to Interior, which is then approved if the Secretary determines that, "after careful examination of the circumstances in each case, the transaction appears to be clearly justified in light of the long-time best interest of the owner or owners . . . ." 25 C.F.R. § 152.23. The regulations also provide that no sale may be completed until the property has been appraised. 25 C.F.R. § 152.24. In the case of a sale by auction, bids lower than the appraised value of the property may be accepted by Interior only if the highest bid "approximates said appraised fair market value" and the Secretary concludes that the land is unlikely to bring a higher price under the circumstances. *See* 25 C.F.R. § 152.28(b). For other types of transfers authorized by Part 152, sales of land at lower than fair market value are generally not allowed unless the transaction is between relatives or individuals with a close personal relationship. *See* 25 C.F.R. §§ 152.25(a); 152.25(c)-(d).

The common feature of all these kinds of Part 152 sales is that they require communication between individual Indian trust-land owners and agents of Interior. The plaintiffs claim that these communications, whether in the form of formal applications for sale by auction or negotiated contract brokered by Interior, or requests for approval of other types of sales or exchanges, violate this Court's 2002 Order. The plaintiffs allege that, though Part 152 requires that an appraisal be performed before any sale is consummated, there are instances in which Indian land is sold with no appraisal at all, making it possible that trust lands are being sold at below market value. Furthermore, plaintiffs claim that some owners' applications, which constitute their consent to sales by Interior, are out of date—that is, they were signed years before Interior took any action to sell the land in question.

It is unnecessary to give a detailed account of the numerous flaws the plaintiffs cite in the application and authorization process, evidenced by the written documentation for Invitation No. 69 alone—a few examples will suffice to illustrate the plaintiffs' concerns. First, in the case of parcel "Kiowa # 669," (number 20 on Invitation No. 69), the beneficial owner of the tract submitted a request that the land be sold to Interior's Bureau of Indian Affairs ("BIA") in 1997. In 1998, an auction was held, a bid was received, and the owner was notified of the receipt of the bid. Later that year, the BIA notified the owner that it had cancelled the sale, and the owner

never reapplied for sale of the land. The owner now attests that he or she does not want to sell the land; but it nevertheless appears on the list of parcels up for auction in Invitation No. 69. *See* Aff. of Guest, ¶ 6 (Pl.'s Supp. Reply, Ex. 3).

Second, in the case of the parcel designated "Comanche 762" (number 11 on Invitation No. 69), the landowner, according to records furnished to plaintiffs by Interior, did not know that his or her land was part of the auction and had never submitted the required application to include the parcel in the auction advertised in Invitation No. 69. *See* Aff. of Guest, ¶ 7 (Pl.'s Supp. Reply, Ex. 3).[1]

Put summarily, on the basis of various observations regarding the documentation surrounding the land that was scheduled for auction in Invitation No. 69, the plaintiffs contend that these Part 152 sales of Indian land risk "irreparable harm" to individual Indian landowners because there is no evidence that the owners are fully informed of the consequences of such sales with respect to the trust. *See* Pl.'s Mot. for Prelim. Inj. at 2, 3. Indeed, in some cases it seems that the landowners may be fully unaware that their land is up for sale in the first place. Most importantly for the purpose of these proceedings, however, there is no evidence in the record to indicate that trust beneficiaries involved in these Part 152 sales and exchanges are given information about this litigation and its intended result—namely a full and accurate historical accounting of the trust.

However, the adequacy of the procedures detailed in Part 152 for the conduct of the various kinds of sales and exchanges of Indian lands is not at issue here. Rather it is the *communications* between Interior and members of the plaintiff class incident to Part 152 sales that are the subject of the current dispute. The Court will not further address the propriety of Interior's conduct in processing and maintaining the applications and other documentation produced incident to Part 152 sales; but will focus solely on

whether the aspect of that documentation procedure that constitutes communication between Interior and class members violates the 2002 Order and thus warrants supplementation of that Order pursuant to Rule 23(b) to prevent interference with class members' rights.

If it is the case that the procedures required by Section 152 are not in fact followed in every sale, then there is a risk that individual Indians are selling their trust assets for less than their actual value. However, even if plaintiffs' allegations are incorrect, and all land sales under Section 152 are conducted in exact accordance with regulatory protocol, there remains the issue of whether any individual Indian owner of trust lands can give truly informed consent to the sale of trust corpus in the absence of a full and accurate accounting. The trust beneficiaries' right to just such an accounting is, of course, the central subject of this litigation. The extent to which the communications between Interior and class members incident to Part 152 land sales affect the class members' right to that accounting is the only issue currently before the Court.

## ANALYSIS

The issue before the Court is whether the communications between the Interior defendants and members of the plaintiff class regarding Part 152 land sales have an effect similar to those that prompted the Court to enter the 2002 Order. If the facts support such a finding, the Court will issue a supplement to the 2002 Order pursuant to Rule 23(d) to enforce the 2002 Order as it applies to Part 152 sale-related communications. Again, the relevant question is whether the communications at issue here interfere with individual Indians' right to a full and accurate accounting of their trust interests.

Before resolving the central question, however, the Court must address the Interior defendants' threshold arguments contesting

---

1. The plaintiffs also contend that Indian land is often sold before any appraisal is performed, and in the absence of cadastral surveys supposedly mandated by Interior regulations. These allegations are matters of contested fact, and there is insufficient evidence in the record for the Court to determine whether the plaintiffs are correct. However, this is beside the point as the issue of the sufficiency of Interior's Indian land sale procedures is not properly before the Court.

the Court's jurisdiction, the plaintiffs' standing to request this relief, and the issue of whether the actions of Interior that prompted the plaintiffs' motion are, in fact, subject to judicial review or whether they are within the sole discretion of the Secretary of the Interior.

## A. Threshold Matters

### 1. Jurisdiction

Interior argues that this Court has no jurisdiction to address land-sales-related communications between Interior and members of the plaintiff class because such communications are matters of "asset management" rather than accounting. Def.'s Opp. at 4–5; Def.'s Supp. Opp. at 11–12. The Interior defendants contend that this Court's jurisdiction in this case is limited to "compel[ling] agency action 'unlawfully withheld or unreasonably delayed,'" *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C.Cir.2001), and that "asset management is not part of this lawsuit." *Cobell v. Babbitt*, 91 F.Supp.2d 1, 18 (D.D.C. 1999). To issue an order altering some aspect of Interior's management of trust assets, on this line, would be to exceed this Court's jurisdiction.

Unfortunately, both propositions on which the Interior's argument is predicated are suspect. First, it is by no means clear that the land sales in question, and the associated communications, are purely matters of "asset management." After all, the plaintiffs allege, in line with prior findings of this Court, that Interior's internal information-management infrastructure is generally so out of sorts that conducting any further transactions involving trust assets or trust income risk exacerbating the already sorry state of the trust records, further delaying the production of a meaningful accounting.

■ Furthermore, it is the communications with class members that by definition comprise part of the procedure for land sales under Part 152 that are at issue here, not the other processes related to sales of Indian lands. To the extent that Interior is communicating with members of the plaintiff class, there is no argument presented that persuades this Court that actions that potentially affect the rights of class members are somehow beyond the Court's jurisdiction to review. The rights of class members that properly concern this Court are, of course, limited to those that are at issue in this litigation. Those rights have been enumerated previously, and it remains to be seen whether the communications at issue do, in fact, implicate the relevant rights. If, however, this Court so finds, then the question of jurisdiction to act has already been answered resoundingly in the affirmative. *See Cobell v. Babbitt*, 91 F.Supp.2d 1, 24–38 (D.D.C. 1999) (laying out the contours of this Court's remedial jurisdiction with respect to the nature of the plaintiffs' claims)

Second, the Court need not decide whether the communications at issue here are matters of asset management or, rather, are sufficiently related to accounting to fall within the narrowly drawn jurisdictional arena to which the Interior defendants would limit the Court. There is nothing in any decision in the lengthy history of this litigation to suggest that the Court's jurisdiction to act is so restricted. To the extent that some aspects of what might otherwise be purely matters of "asset management" have an impact on class members' right to a full and accurate accounting of their trust assets, *Cobell v. Norton*, 240 F.3d 1081, 1103–04 (D.C.Cir.2001) (clearly establishing the duty of the government to provide such an accounting), this Court has jurisdiction to require or restrict agency conduct as a consequence of the Court's remedial jurisdiction to enforce Interior's established fiduciary duties. *Cobell v. Norton*, 240 F.3d at 1105 (explaining that the duty to render an accurate and complete historical accounting involves "substantial subsidiary duties on those government officials with responsibility for ensuring that an accounting can and will take place.").

To be sure, not all aspects of Interior's dealings with the trust, trust assets, or trust income will fall under the Court's jurisdiction in this way. However, where there is a substantial connection between some Interior action and the rendering of the required accounting, that action is subject to scrutiny under this Court's continuing jurisdiction to ensure that the required accounting is, in

fact, produced without further delay. *Cobell v. Norton,* 240 F.3d at 1110 (noting that this Court has continuing jurisdiction to "monitor [Interior's] remedying of the delay"). The Court finds that where some action or course of conduct by Interior substantially interferes, or potentially interferes, with the rights of class members to an accurate historical accounting, the Court has continuing jurisdiction and restrict such conduct if necessary to ensure that Interior fulfills its fiduciary obligations. This jurisdiction obtains even where the challenged action or course of conduct is in some sense related to "asset management."[2] To conclude otherwise would be to take the untenable position that this Court has the authority to determine the nature of Interior's fiduciary duties with respect to the trust, but no power to ensure that such duties are in fact carried out.

Finally, this Court has jurisdiction to address the legitimacy of these land-sale-related communications on the basis of the nature of this litigation. Because this is a class action lawsuit, the Federal Rules of Civil Procedure provide the Court with authority to ensure that the representative parties do not interfere with the rights of the plaintiff class. This authority is a necessary incident to the Court's role as guarantor of the due process rights of class members. *See* FED. R. CIV. P. 23(d); *Cobell v. Norton,* 212 F.R.D. 14, 19 (D.D.C.2002) ("Rule 23(d) of the Federal Rules of Civil Procedure provides a court presiding over a class action with the authority to 'impos[e] conditions on the representative parties.' ") (quoting *In re School Asbestos Litig.,* 842 F.2d 671, 683 (3d Cir. 1988)). Of course, it goes without saying that if the communications at issue here are found to violate the 2002 Order, this Court has inherent jurisdiction to enforce its prior directives.

**2.** The defendants mistake meaning this Court's statement that "asset management is not part of this case." *See* Def.'s Opp. at 4–5. As the plaintiffs indicate, this snippet is from a larger statement, which reads "Appraisals are important for evaluating whether the trustee is managing the underlying assets prudently. While asset management is not part of this lawsuit, appraisal backlogs affect the processing of leases, which in turn affects the ability to render an accounting." *Cobell v. Babbitt,* 91 F.Supp.2d at 1, 18. The meaning of this statement should be obvious.

### 2. Standing

Interior next argues that the plaintiffs fail to demonstrate sufficient injury-in-fact to establish that they have standing to seek the relief requested. Before deciding any other substantive issue that comes before it in a given case, a federal district court must determine whether the parties have presented a justiciable "case" or "controversy" within the meaning of Article III. The requirement that federal courts hear only justiciable disputes principally serves to limit the expansion of the judicial power in a manner consistent with constitutional structure. *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Generally, in order to establish standing to sue, a plaintiff must show that he or she has (1) a legally cognizable injury in fact that is (2) fairly traceable to the challenged conduct of the defendant and (3) redressable by favorable judicial action. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).; *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Watt v. Energy Action Educational Foundation,* 454 U.S. 151, 161, 102 S.Ct. 205, 70 L.Ed.2d 309 (1981); *Branton v. FCC,* 993 F.2d 906, 908 (D.C.Cir.1993); *Fulani v. Brady,* 935 F.2d 1324, 1326 (D.C.Cir.1991).

The Interior defendants contend that, in order to satisfy the standing requirements, plaintiffs must show that the *representative* plaintiffs have suffered "actual injury with respect to a sale under 25 C.F.R. Part 152."

While Interior's trust-asset-management processes are not the *subject* of the underlying litigation in this case, observations of serious deficits in those processes may indicate that Interior's conduct is affecting class members' right to an accounting. Similarly here, the Court observes features of Interior's Part 152 land sale procedure that may adversely affect class members rights, and acts upon those observations. This kind of action in no way contravenes the statement that "asset management is not part of this lawsuit."

Def.'s Supp. Opp. at 12. Interior misunderstands, it seems, the nature of the injury at issue in this litigation. The representative plaintiffs, and indeed all members of the plaintiff class, have established standing to sue in this case on the basis of the injuries they have suffered, and will continue to suffer in the future, from Interior's historical and ongoing mismanagement of the Individual Indian Money trust accounts, trust assets, trust income, and so forth.

This is a group injury—affecting members of the plaintiff class to various degrees depending on the nature of their trust interests, but nevertheless affecting the entire group to one degree or another. The group injury is traceable to conduct by the defendants that amounts to a systemic failure to adequately manage the Indian trust, which systemic failure manifests itself in various ways that may affect some members of the group and not others, again depending on the nature of each group member's trust interest. It is of no moment for the standing of the plaintiff class that one manifestation or another of the systemic cause of the group injury affects some class members and not others, or does not affect the representative plaintiffs at all. Again, so long as the action or course of conduct complained of is: (1) part of·that systemic problem that is the cause in fact of the group injury that supports the standing of the plaintiff class; and (2) potentially injurious to some member or members of the plaintiff class; then that action or course of conduct is fairly within the ambit of systemic injury for which the plaintiff class's standing is already established.[3]

The failure of Interior to create and maintain an accurate and complete accounting of the trust is one symptom of this mismanagement that has been held, by this Court and by the Court of Appeals, to constitute a breach of fiduciary duty by Interior. Plaintiffs as a group are beneficiaries of the trust that has been so mismanaged, and thus any additional mismanagement by Interior threatens to injure not only the representative plaintiffs but the entire class.

Furthermore, the argument that the named plaintiffs themselves must show an actual injury directly traceable to each discreet instantiation of Interior's general mismanagement of the trust, such as the failure to maintain adequate records, adequately secure computerized record storage systems, or the failure to produce an accounting, is simply inconsistent with the established theory of injury in this case. The plaintiffs, as a group, are all beneficiaries of the fiduciary duties that attach to Interior as trustee-delegate for the Indian trust. Thus, any breach of a general fiduciary duty injures the entire beneficiary group, including the named plaintiffs. And, any action or course of conduct by Interior that hinders the fulfillment of any of Interior's fiduciary duties owed to the plaintiff class similarly does injury to the group's rights and thus constitutes an "injury in fact" to the entire plaintiff class. Thus, to the extent that this Court concludes that the challenged land-sale-related communications do in fact interfere with plaintiff class members' rights to a full and adequate accounting of the trust, a group injury sufficient to support standing will be established.

---

3. For a case in which a similar theory of group standing was applied to a class action, *see Comm. for GI Rights v. Callaway*, 518 F.2d 466, 470–72 (D.C.Cir.1975). In *Callaway*, the D.C. Circuit held that named plaintiffs in a class action had standing to assert, on behalf of 145,000 American GI's in the United States Army's European Command, that the European Command's drug control policy violated the Fourth and Fifth Amendment rights of the plaintiff class. *See Callaway*, 518 F.2d at 469–71. In resolving the standing challenge, the Court of Appeals held that, although the named plaintiffs and other members of the plaintiff class had only been injured by one or another of the several features of the policy alleged to be unconstitutional, the entire class had standing to challenge the program as a whole on the theory that any member of the plaintiff class could be subjected to deprivation of their constitutional rights in the future because all class members were generally subject to all parts of the challenged program. *See id.* at 471–72. Similarly here, the fact that the entire plaintiff class is, by definition, subject to Interior's overall trust management and accounting program, any challenged practice within that system is potentially injurious to every member of the class. Thus, the entire class has standing to challenge aspects of Interior's management of the trust that potentially affect the rights of any class member.

### 3. The Discretion of the Secretary of the Interior

The defendants' third threshold argument is that Part 152 land-sales procedures are not amenable to review by this Court because the content and execution of those procedures are matters firmly within the discretion of the Secretary of the Interior. Specifically, the Interior defendants argue that "[t]o the extent that Plaintiffs attack the implementation of the sale regulations, this Court lacks jurisdiction, because the procedure is committed to the Secretary's discretion," Def.'s Supp. Opp. at 13, and "to the extent that the plaintiffs are challenging the sale regulations on their face, such challenge is barred by the statute of limitations." Def.'s Opp. at 7 n. 7. This Court does not construe the plaintiffs' Motion as making either of the challenges that the Interior defendants discuss.

Whether or not the communications at issue here are procedurally proper in light of the authorizing statutes or regulations is not an issue before this Court. Neither is the power of Interior to promulgate the regulations embodied in Part 152. The only issue before the Court, again, is whether communications between Interior and members of the plaintiff class are violative of this Court's 2002 Order, which necessarily requires consideration of whether such communications affect some right of class members that is at stake in this litigation. Certainly Interior cannot mean to suggest that determination of the scope of a valid Order of this Court, and of whether the defendants have complied with that Order, is somehow beyond the Court's jurisdiction. If that is the defendants' allegation, there is no argument in the pleadings to support it. Thus, as the Court's decision here will not reach the legitimacy of the communications at issue with respect to the governing regulations; nor will it reach the legitimacy of those regulations themselves under the relevant governing legislation; there can be no finding that the resolution of this issue is reserved to the discretion of the Secretary. To the contrary, determining whether Interior has complied with the unchallenged 2002 Order is firmly within the province of this, the issuing Court.[4]

### B. The Challenged Communications and the Requested Relief

As has been discussed above, the Court will not address the question of whether Interior's conduct in managing Part 152 land sales is legitimate with respect to the requirements of governing statutes or regulations. Nor will the Court determine whether the plaintiffs have proven that Interior's practices in conducting these sales constitutes a breach of trust or fiduciary duty. The only issue properly before this Court is whether the aspects of the Part 152 sale procedure that constitute communication with class members, namely the application and approval procedure, violates the 2002

---

4. The Interior defendants also argue that the TRO issued by this Court on August 31, 2004 violated Federal Rules of Civil Procedure 65(c) and 65(d), by failing to require plaintiffs to post a security and failing to adequately specify the terms of the TRO, respectively. As to the first argument, it is within the Court's discretion to waive Rule 65(c)'s security requirement where it finds such a waiver to be appropriate in the circumstances. See Int'l Controls Corp. v. Vesco, 490 F.2d 1334, 1356 (2d Cir.1974), cert. denied 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974); United States v. Bedford Assocs., 618 F.2d 904 (2d Cir.1980); Corrigan Dispatch Co. v. Casa Guzman, S.A., 569 F.2d 300, 302–03 (5th Cir. 1978); Cont'l Oil Co. v. Frontier Refining Co., 338 F.2d 780, 782 (10th Cir.1964).

With respect to the Interior's Rule 65(d) specificity objection, the Court finds that its TRO was not "too vague to be understood," on the standard set forth by the Supreme Court. See Schmidt v. Lessard, 414 U.S. 473, 476–77, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). The Court ordered that Interior "immediately halt, under 25 C.F.R.[ ] Part 152, the auction of Individual Indian Trust land." Order of Aug. 31, 2004. There is no sense in which this Order could have caused the kind of "uncertainty and confusion on the part of those faced" with the TRO that the Supreme Court explained Rule 65(d) was designed to prevent. See Schmidt, 414 U.S. at 476, 94 S.Ct. 713. Several types of sales of Indian lands are governed by Part 152, one of which is sale by auction. The facially obvious effect of the TRO was to restrain Part 152 auctioning of individual Indian trust lands. The Interior defendants' decision to interpret the Court's Order to restrain all Part 152 sales, see Def.'s Supp. Opp. at 1, does not make the Order itself ambiguous. The Order to accompany this Opinion will provide even greater specificity than the August 31 TRO, and should thereby eliminate any concerns Interior might have about what is required of it.

Order by interfering with class members' rights, warranting further Rule 23(b) relief.

■ Previously, this Court held that Interior's position as Trustee–Delegate carried with it certain fiduciary duties, including the duty to render a complete and accurate historical accounting of the trust. *Cobell v. Babbitt*, 91 F.Supp.2d 1, 40–42; *Cobell v. Norton*, 240 F.3d at 1102–04. It follows that plaintiff class members, as beneficiaries of the trust and therefore beneficiaries of the fiduciary duties of the Trustee–Delegate, have a vested right to that accounting.

Rule 23(d) of the Federal Rules of Civil Procedure provides a Court presiding over a class action with the authority to "impos[e] conditions on the representative parties. Rule 23(d) does not, however, require a finding of actual harm; it authorizes the imposition of a restricting order to guard against the '*likelihood* of serious abuses.'" *In re School Asbestos Litig.*, 842 F.2d at 683 (citing *Gulf Oil*, 452 U.S. at 104, 101 S.Ct. 2193). Furthermore, a district court "has the duty and authority to restrict communications that interfere with the proper administration of a class action and to restrict conduct that abuses the rights of members of the class." *Jack Faucett Assocs.*, 1985 WL 25746 at *5 (district court may enter restrictive order where "evidence establishes that the restricted communications have the potential of interfering with the rights of the class members"); *see also* NEWBERG ON CLASS ACTIONS § 15.02, at 15–6 (3d ed. 1992) ("When the court finds that the class action has been abused to the potential prejudice of class members, the court has full power to take appropriate remedial action to avoid or minimize any prejudice to the class.").

■ The Court may issue a Rule 23(d) order "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). After exhaustive review of the relevant factual record and the arguments of counsel, the Court finds that Interior's communications with class members in connection with Part 152 land-sale procedures present a sufficient likelihood of serious interference with the rights of plaintiff class members to warrant a Rule 23(d) order imposing conditions on those communications. The Court's reasoning is detailed in this section.

With its order of December, 2002, this Court restricted communications between Interior and plaintiff class members that were found to interfere with those members' rights in this litigation. The Court found that Interior's "historical statements of account" effectively forced an accounting not created pursuant to this Court's Orders upon class members. After all, the statements of account were intended to become "final" if not challenged within a short period of time, thereby preempting the accountings that Interior had been ordered to produce by this Court.

On the basis of these findings, and pursuant to its duty and authority under Rule 23(d), the Court restricted those communications, ordering that Interior could not communicate with members of the plaintiff class to "discuss this litigation, or the claims that have arisen therein, without prior authorization from this Court." *Cobell v. Norton*, 212 F.R.D. at 20. The rationale for the entry of this order was to prevent Interior from "imping[ing] upon the rights of class members ... to a full and accurate accounting." *Id.* To that end, the Court explained that its Order "includes, but is not limited to, any communications that affect the rights of class members to a full and accurate accounting of their Individual Indian Money trust accounts." *Id.* at 24. The Court allowed "regular sorts of business communications with class members that occur in the ordinary course of business" to continue "because they do not purport to extinguish the rights of the class members in this litigation." *Id.* at 20–21.

Here, the communications at issue do not as obviously threaten to interfere with the rights of plaintiff class members to receipt of a full, accurate historical accounting. The writings that prompted the 2002 Order stated, in no uncertain terms, that failure to object to Interior's "historical statement of account" would effectively foreclose a recipi-

ent class member's rights to the accounting ordered in this litigation. However, despite their more innocuous appearance, the communications between Interior and class members incident to Part 152 land sales do, in fact, have a similar effect on class members' rights.

The Interior defendants argue that Part 152 land sales, due to the regularity with which they are conducted, are part of Interior's "ordinary course of business" in managing Indian trust assets, and thus must be exempt from the Court's 2002 Order. But the Court's Order was not intended to merely safeguard the bare right of individual Indian trust beneficiaries to receive the historical accounting that is the necessary result of this litigation. The central concern of the 2002 Order, and of this litigation generally, is to guarantee that Interior adheres to its fiduciary duties, and to ensure that trust beneficiaries receive the full value of conscientious behavior by their Trustee–Delegates.

It is not the accounting in and of itself that is the desired product of this Court's enforcement of Interior's fiduciary obligations. Rather, and quite obviously, the Court intends that trust beneficiaries remain, after this litigation is completed, in a position in which the accounting that Interior must generate will be in some meaningful sense beneficial. That means, at the very least, that the trust beneficiaries should retain all or most of their trust assets, in as unaltered a state as is practicable, until Interior completes the required accounting. This "freezing of the status quo" is desirable so that the historical accounting can support the kind of informed disposition of trust assets that ought to be facilitated by conscientious management by a principled fiduciary.

In light of this purpose, then, it is clear trust beneficiaries ought not have to make the decision to sell trust assets without access to all the relevant information. That is, individual Indians, for example, should not have to decide whether to sell their land without access to a full and accurate accounting, appraisal, and other relevant information. Of course, absent some miracle, no full and accurate accounting of the trust is in the immediate offing. Thus, it seems the best that can be hoped for is that plaintiff class members be informed of the pendency of this litigation and its desired result prior to making decisions about the disposition of their portion of the trust corpus.

While it is difficult to envision the ways in which information about this litigation and the historical accounting that Interior has been ordered to produce would affect the decision of any given trust beneficiary on whether or not to sell trust land, it is impossible to imagine that such information would have no effect at all. If the underlying rationale for enforcing the right to an accounting is to facilitate informed decision-making with respect to the disposition of trust assets, then to allow beneficiaries to continue to make decisions that substantially alter their trust interests without information about this litigation and Interior's obligations is to effectively rob those beneficiaries of the *cash value* of their rights.

It should be noted that Part 152–sale–related communications will have this effect without regard to whether the plaintiffs are correct about Interior's failure to properly administer the sales, informational deficits that inhere in the process, or any intent to mislead or defraud on the part of the Interior defendants. Even if the sales were carried out in perfect adherence to regulatory guidelines, with the most benevolent of motives, there can be no *meaningful* right to an accounting without the more fundamental right to make informed decisions when disposing of trust corpus.[5] Thus, the Court need not

5. The parties engage in a lengthy back-and-forth about whether the sale of trust land under Part 152 extinguishes an Individual Indian Money Account-holder's rights as a trust beneficiary. The defendants have conceded that this is not the case, even if the land sale results in the closure of the IIM account, as both present and former IIM account holders are included in the plaintiff class and thus have all the rights of plaintiff class membership. This argument fails to take into consideration the nature of the rights that are at issue here. As the Court has made clear, it is simply not relevant whether the sale of trust land extinguishes class members' rights—it is the fact that members' must make the decision to sell without adequate information that interferes with the right to an accounting.

reach any of the contentions bearing on the propriety of Part 152 sale procedure or the motivations of Interior and its agents. The Court therefore finds that any beneficiary who decides whether to sell trust land without being informed about this litigation and the accounting that Interior has been ordered to produce is always and already stripped of the very rights that the accounting was ordered to protect.

The Court also recognizes, however, that trust beneficiaries may have good reason to attempt to sell their trust land during the pendency of this litigation. Both the defendants and the National Congress of American Indians produce convincing arguments and evidence to this effect. Therefore, it would be impracticable and potentially harmful to class members to "freeze" all Part 152 sales for the duration of this controversy. To do that would both exacerbate the financial duress of some trust beneficiaries who need to sell their trust assets,[6] and frustrate the efforts of tribal governments attempting to consolidate Indian lands with massively fractionated ownership.[7]

In light of these findings, the Court will supplement the 2002 Order pursuant to Rule 23(d) to require that all communications between Interior and trust beneficiaries related to sales or exchanges of trust assets of any kind, including but not limited to sales or exchanges of trust land under Part 152, include notice to class members regarding this litigation and Interior's duties as Trustee–Delegate. The notice will have to be submit-

ted to and approved by the Court, and might include, for example: (1) reasonable notice to the class members of the pendency of this litigation; (2) an adequate description of the nature of the pending claims; and (3) an adequate description of both the relief that has already been granted and that which plaintiffs seek at the end of this litigation. The notice displayed on the communications must advise the class member of his or her right to consult with class counsel before making any decisions that affect his or her trust interests, and must allow the class member sufficient time in which to do so. The notice may also inform class members of their right to waive consultation with class counsel if they choose to do so. These rules shall govern all communications between Interior and class members that affect class members' rights at issue in this litigation until this dispute is resolved.

The Order that will issue this day will supplement the Court's 2002 Order, as the Court has concluded that Interior's communications with class members relating to Part 152 land sales interfere with the class's right to an accounting. Such interference, as has been made clear, violates the 2002 Order and, therefore, must be conditioned on proper notice as described in this opinion.

## CONCLUSION

For the reasons set forth above, the Plaintiffs' motion for a Preliminary Injunction shall be DENIED AS MOOT in light of the relief granted in the form of a supplement to

---

Interior also argues that there can be no interference with the rights of class members because, often, it is the class member him– or herself who initiates the communications related to Part 152 land sales, as by submitting an application for sale or exchange. This argument also fails to come to terms with the nature of the rights at stake here, as no class member could make an informed decision to contact Interior to initiate a Part 152 sale without relevant information about this litigation.

Finally, there is some dispute over the scope of class membership. As that issue is not properly before the Court in the instant dispute, it will not be addressed.

6. The defendants have submitted a number of letters under seal evidencing the financial need of some sellers of trust land. The Court cannot and will not simply ignore the fact that some of

those who desire to participate in Part 152 sales do so for very compelling reasons.

7. *See* Brief of the National Congress of American Indians Regarding the Temporary Restraining Order of August 21, 2004 as Amicus Curiae, submitted Sept. 27, 2004, at 1–2. The National Congress persuasively argues that tribal land consolidation programs are urgent in some cases, as when "tribes need to acquire specific lands or fractional interests in order to proceed with the development of tribal facilities, such as buildings, water systems, key range unit parcels, etc." *Id.* at 2. The Court is also not insensitive to these kinds of concerns, and will thus fashion relief that attempts to strike a balance between these kinds of concerns and the Court's concern to preserve the core of class members' rights as fiduciary obligees in this case.

the Court's 2002 Rule 23(d) Order. The Court's Temporary Restraining Order, issued August 31, 2004, is hereby dissolved and replaced with the supplemented Rule 23(d) Order as specified in this Opinion and the accompanying Order.

A separate Order shall issue this date.

